UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEARBORN TREE SERVICE, INC.,

        Plaintiff,

        v.

GRAY'S OUTDOOR SERVICES, LLC, and
        THOMAS GRAY,

        Defendants.
_____/

Case No. 13-cv-12584

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I, II, IV, AND V, AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT III**

**I. INTRODUCTION**

Dearborn Tree Service, Inc., ("Dearborn Tree" or "Plaintiff") commenced this action on June 13, 2013 against Gray's Outdoor Services, LLC ("Gray's Outdoor Services"), Thomas Gray ("Gray"), TreeServiceMarketing.com, Inc. ("TSM"), and Brandon Lombardo. *See* Dkt. No. 1. On February 20, 2014, Plaintiff filed an Amended Complaint adding no new parties and no new claims. *See* Dkt. No. 43. In the Amended Complaint, Plaintiff contends that Gray's Outdoor Services and Mr. Gray ("Defendants") are liable for: (I) Cybersquatting under the Anti-Cybersquatting Consumer Protection Act ("ACPA"); (II) False Designation of Origin under the Lanham Act; (III) Business Defamation; (IV) Unfair Competition; and (V) Concert of Action. *Id.*

TreeserviceMarketing.com, Inc. and Brandon Lombardo were dismissed from this action pursuant to a stipulated order. *See* Dkt. No. 136. Mr. Gray and Gray's Outdoor Services are the only remaining Defendants in this case.

-1-

On June 1, 2015, Defendants filed a Motion for Partial Summary Judgment on Counts I, II, IV, and V. *See* Dkt. No. 137. On June 10, 2015, Plaintiff filed a Motion for Partial Summary Judgment on Count III. *See* Dkt. No. 142. For the reasons discussed herein, both Motions are DENIED.

**II. BACKGROUND**

Because there are two different Motions present before the Court, and both are rather fact specific, the Court will divide the factual background into two parts reflecting the relevant facts for each Motion.

**A. Facts Relevant to Defendants' Motion for Summary Judgment on Counts I, II, IV, and V**

Dearborn Tree performs tree-related services (tree trimming, tree removal, etc.) and light landscaping services for both residential and commercial customers throughout Wayne, Oakland, Washtenaw and Monroe Counties. Dkt. No. 151 at 9, Pg. ID No. 2627. Dearborn Tree has been continuously doing business under the name "Dearborn Tree Service" since 1982. *Id.* Since 1982, Plaintiff has expended nearly $85,000 per year toward advertising. *Id.* Since being incorporated, Plaintiff's gross sales increased from $287,000 in 1996 to as high as $1,500,000 in 2004. *Id.* Plaintiff has never registered the trade name "Dearborn Tree Service" as a trademark with any state or federal agency. Dkt. No. 137 at 14, Pg. ID No. 1655.

In 2010, Plaintiff sought to register the domain name, dearborntreeservice.com online, but was unable to do so as it was registered by one-time Co-Defendant TreeserviceMarketing.com and in use by Defendants. Dkt. No. 151 at Pg. ID No. 2628. Plaintiff sought to use an alternative domain name, namely dearborntreeservices.com, but was unable to utilize it due to issues with the selected website developer, in part because of the existence of

dearborntreeservice.com. *Id.* Plaintiff initiated this action on June 13, 2013 against Defendants. *Id.* at Pg. ID No. 2626.

Defendants operate Gray's Outdoor Services, which provides services that overlap and compete with those of Plaintiff. *Id.* at Pg. ID No. 2629. Defendants allegedly used the dearborntreeservice.com domain name, which was registered to TSM, the provider of a lead generation service, in order to receive at least 944 customer leads from as early as 2011. *Id.* Although not the registrant of dearborntreeservice.com, Defendants used the website as TSM's authorized licensee. *Id.* The website, dearborntreeservices.com published a phone number. When potential customers called that number, an operator would purportedly take their information and then send that information as leads to the Defendants. *Id.* The website also allegedly used the Plaintiff's trade name. *Id.* Plaintiff claims the lead service relayed information about the lead to Defendants, and in turn the Defendants would call the lead. *Id.*

Several of the leads Defendants received specifically requested the Plaintiff. *Id.* During discovery, Defendants produced an email from a prospective customer who was confused as to whom he was contacting and whether there was an affiliation between Plaintiff and Defendants. *Id.* at Pg. ID No. 2630 ("I thought I had contacted a company called 'Dearborn Tree Service' or do you contract with them?"). Furthermore, a third-party competitor who also used the lead service testified during his deposition:

> [O]n numerous occasions when I contacted the potential customers sent to me by TreeService.com, many of them either asked for an entity known as 'Dearborn Tree Service' directly, or believed that I was calling from 'Dearborn Tree Service.'
> …
> I had heard of and knew of 'Dearborn Tree Service,' and I understood it to be an entity that provides tree services in the metro Detroit area.

*Id.*

Plaintiff asserts that Defendants had heard of Dearborn Tree prior to the filing of the lawsuit. *Id.* Roughly sixty days after the filing of this lawsuit, Defendants registered or leased the domain name dearborntreeservices.net, as well as dearborntree.com, dearborntree.net, dearborntreetrimming.com and deerborntreeremoval.com. *Id.* at Pg. ID No. 2626. Plaintiff claims Defendants registered these additional domains subsequent to Plaintiff's co-owner, Randy Hutchings, contacting and asking Defendants to stop. Dkt. No. 151 at Pg. ID No. 2631. Plaintiff asserts, despite Defendant Gray's assurances that they would indeed stop, the use continued. *Id*.

Defendant Gray testified that they did a lot of business in Dearborn and Dearborn Heights and registered the domain names at a time when they were no longer receiving leads from TSM. Dkt. No. 137 at Pg. ID No. 1657. Defendants claim they merely wanted to keep business going. *Id*. Defendants also leased other city-based names such as gardencitytree.com, livoniatree.com and westlandtree.com.[1] *Id.* Each domain name would purportedly redirect to the website graysoutdoorservices.com. *Id.* However, there is evidence that Mr. Gray told a man, David Howard, that (1) he had registered domain names using variations of Plaintiff's trade name in order to "piss off" Plaintiff's owner and (2) he was going to do everything he could to hurt Plaintiff and put them out of business. Dkt. No. 151 at Pg. ID No. 2631.

**B. Facts Relevant to Plaintiff Motion for Summary Judgment on Count III**

Plaintiff, Dearborn Tree, is owned by John Matusek and Randy Hutchings. Mr. Matusek testified that toward the end of 2009, or beginning of 2010, he received a letter asking him to meet with the Internal Revenue Service because his company was behind in paying its payroll taxes and a payment plan had to be worked out. *Id.* at Pg. ID No. 2489. The taxes were eventually paid off. *Id.*

---

[1] The use and registration of these other city-based domain names is also in dispute.

In either 2009 or 2010, Randy Hutchings received complaints from several Dearborn Tree customers. Dkt. No. 142 at 8, Pg. ID No. 1866. Apparently, the customers had attempted to schedule an appointment with Dearborn Tree, but instead Defendant Thomas Gray of Gray's Outdoor Services showed up at their homes and told them that Dearborn Tree was out of business. *Id.* After receiving such complaints, Mr. Hutchings claims that he contacted Mr. Gray by telephone, told him that Dearborn Tree was still in business, told him about the customer complaints he had received, and asked Mr. Gray to stop telling potential customers that Dearborn Tree was out of business. *Id.* Plaintiff claims that Mr. Hutchings received customer complaints on two more occasions afterward, and each time notified Defendants. *Id.*

During discovery, Defendants produced an email chain dated January 7, 2011 between Defendant Gray and a man by the name of Steve Yuhasz. *Id.* The email exchange consists of the following messages:

> **Thomas Gray:** hi steve my name is thomas gray with grays services please give us a call at your convenience regarding tree removal we would be glad to give u an free estimate thank you contact 248-470-2316 or visit or web site at www.graysservices.com
>
> **Steve Yuhasz:** Thomas,
> I thought I had contacted a company called "Dearborn Tree Service" or do you contract with them?
> Thank you.
>
> **Thomas Gray:** I don't believe they are in business any more. From what I hear.

*Id.*

On April 11, 2013, a woman by the name of Stephanie Belmont called the 1-800 number listed on the dearborntreeservice.com web page at the request of John Matusek. Dkt. No. 149 at 12, Pg. ID No. 2485. Ms. Belmont and Mr. Matusek have been involved in a romantic

relationship since 1983. *Id.* Ms. Belmont had also worked at Dearborn Tree on an unpaid basis "to help out," from sometime in 2010 to sometime in 2013. *Id.*

Within an hour of calling the number, Ms. Belmont received a phone call from Mr. Gray. Ms. Belmont testified that she requested an estimate for a tree removal, even though she had no intention of hiring Mr. Gray. *Id.*; *see also Id.* at 2486. Mr. Gray later arrived at Ms. Belmont's residence. *Id.* While at Ms. Belmont's residence, Ms. Belmont told Mr. Gray that she had been expecting Dearborn Tree. Dkt. No. 142 at Pg. ID No. 1868. Mr. Gray then told Ms. Belmont that Dearborn Tree was no longer in business. *Id.* Mr. Gray also stated that as far as he knew, one owner of Dearborn Tree went south and the other owner was involved with the IRS, possibly with "tax evasion." *Id.* at Pg. ID No. 1869.

On or about April 17, 2013, a woman by the name of Michaeline Meek called the same 800 number that was posted on dearborntreeservice.com. Ms. Meek has been employed by Dearborn Tree as an administrative secretary since January of 2013. Dkt. No. 149 at Pg. ID No. 2486. Defendants allege the call was made at the request of Mr. Matusek. Dkt. No. 142 at Pg. ID No. 2489. Plaintiff disputes this claim. Dkt. No. 153 at Pg. ID No. 3028. After the call was made, Mr. Gray came out to Ms. Meek's home with another man. When Ms. Meek asked Mr. Gray about Dearborn Tree, Mr. Gray stated:

> From what I hear, is that there was some type of tax fraud or whatever, and one went south. . . the partners split. . . I do know that Dearborn Tree Service can't work in the City of Dearborn. I do know that. . . They're not allowed to work in the City of Dearborn.

Dkt. No. 142 at Pg. ID No. 1869. These statements were recorded by Ms. Meek. *Id.* Mr. Matusek admitted that it was his idea to record the conversation. Dkt. No. 149, at Pg. ID No. 2489.

On April 25, 2013, Roland Coole called the same 800 number at the request of Mr. Matusek. Dkt. No. 149, at Pg. ID No. 2487. Roland Coole and John Matusek have been friends for 40 years. *Id.* Mr. Matusek told Mr. Coole that he was "having a problem with someone stealing their name. It was on the Internet and he was losing business." *Id.* Mr. Matusek asked Mr. Coole if he "would help by giving it a call and find[ing] out what [he] could find out." *Id.* Mr. Gray purportedly stated that: (1) Dearborn Tree no longer existed – one owner went south and the other disappeared; (2) the present owner of Dearborn Tree bought the name and the 1-800-515-7537 phone number; and (3) Dearborn Tree was banned from working in Dearborn, Michigan. *Id.* Mr. Gray has no recollection of ever speaking to Roland Coole. *Id.* at Pg. ID No. 2492.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) empowers the Court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the Court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment on Counts I, II, IV, and V
    *a. False Designation of Origin and Unfair Competition*

Defendants have moved for summary judgment on Plaintiff's claim for False Designation of Origin and Plaintiff's claim for Unfair Competition. Dkt. No. 137 at Pg. ID No. 1661. Defendants argue that they are entitled to summary judgment on both Counts on the grounds that the Plaintiff's trademark is not protectable. *Id.*

Trademarks are typically protected by the Lanham Act. 15 U.S.C. § 1125. A trademark is "any word, name, symbol, or device, or any combination thereof used by a person to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992) (quotations omitted). In order to be valid, "a mark must be capable of distinguishing the applicant's goods from those of others." *Id.* Additionally, marks may be protected by the Lanham Act regardless of whether they have been registered with the United States Patent and Trademark Office. 5 McCarthy on Trademarks and Unfair Competition § 27:18 (4th ed. 2015).

Whether a mark is protected depends on its distinctiveness. Trademarks are divided into five categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos,* 505 U.S. at 768. The latter three categories are deemed to be "inherently distinctive" and are automatically entitled to protection. *Id.* Marks that are merely generic or descriptive of a product are not inherently distinctive. *Id.* Generic marks receive no protection. *Id.* However, a descriptive mark is valid and protectable if it has become distinctive of the applicant's goods in commerce. *Id.* at 769. "This acquired distinctiveness is generally called 'secondary meaning.'" *Id.*

Defendants argue that Plaintiff's mark, 'DEARBORN TREE SERVICE,' being a geographically descriptive mark,[2] is not entitled to the protection of the Lanham Act because it is not distinctive. Dkt. No. 137 at Pg. ID No. 1664-1670. Defendants further argue that the Plaintiff has failed to prove that the mark has acquired the secondary meaning necessary for protection. *Id.*

---

[2] This characterization is not in dispute.

      i. Secondary Meaning

The existence of secondary meaning is a question of fact. *Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 731 (7th Cir. 1998); *see also Metro Sanitation, LLC v. C&R Maintenance,* 2005 WL 1861931, *4 (E.D. Mich. 2005); *see also* McCarthy § 15:29. As with the proof of any fact, secondary meaning may be proved with direct evidence and circumstantial evidence. McCarthy § 15:30. Courts will typically look to the following factors in determining whether a term has acquired secondary meaning: 1) direct consumer testimony, 2) consumer survey, 3) exclusivity, length and manner of use, 4) amount and manner of advertising, 5) amount of sales and number of customers, 6) established place in the market, and 7) proof of intentional copying. *Abercrombie & Fitch, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, n. 14 (6th Cir. 2002) (citing *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264 (7th Cir. 1989)).

In Plaintiff's response, Plaintiff points to several types of evidence of secondary meaning, the strongest being actual customer confusion in the form of direct consumer testimony. Dkt. No. 151 at Pg. ID No. 2635-2636 ("There are no less than 5 instances of consumers contacting Defendants believing them to be Plaintiff"). This evidence by itself is enough to defeat Defendants' Motion. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 639-40 (6th Cir. 2002) (finding that normally emails from consumers expressing confusion about association would create a genuine issue of material fact as to secondary meaning); *see also* McCarthy §15:37 ("Evidence of actual confusion is **strong evidence of secondary meaning**.") (emphasis added); *see also* McCarthy §15:11 ("If buyers are confused between two sources, then this also means that they must have recognized plaintiff's designation as a trademark and associated it only with plaintiff. If this is not so, how could there be any

confusion over source or affiliation? Thus, actual confusion is an indicium of secondary meaning").

Plaintiff, however, provides more evidence of secondary meaning in the form of circumstantial evidence. Plaintiff explains, and Defendants concede, that Dearborn Tree has used its mark since 1982 - about 26 years before Defendants began operating. Dkt. No. 151 at Pg. ID No. 2637; *see also* Dkt. No. 137 at Pg. ID No. 1665 (Defendants concede, "[n]evertheless, arguably this factor slightly favors [Plaintiff]"). Plaintiff also points to the fact that Dearborn Tree has spent approximately $85,000 per year for an extended period of time on advertising. Dkt. No. 151 at Pg. ID No. 2638. Moreover, their sales were as high as $1.3 million in 2008, as compared with Defendants' $200,000-300,000. Dkt. No. 151 at Pg. ID No. 2639. Finally, Plaintiff points to evidence that the Defendants intentionally copied Plaintiff's mark. Dkt. No. 151 at Pg. ID No. 2641. From this a jury could reasonably conclude that the trademark, 'DEARBORN TREE SERVICE,' has acquired secondary meaning and is protectable. Therefore, Defendants' Motion as to Counts II and IV fails.

### b. *Bad Faith Intent Under the Anti-Cybersquatting Consumer Protection Act*

The Defendants have also moved for summary judgment on Plaintiff's claim of Cybersquatting under the ACPA. Dkt. No. 137 at Pg. ID No. 1670. To succeed on a claim of Cybersquatting, a plaintiff must show that: 1) it has a valid trademark; 2) its mark is distinctive or famous; 3) the defendant's domain name is identical or confusingly similar to, or in the case of a famous mark, dilutive of, the owner's mark; and 4) the defendant used, registered, or trafficked in the domain name 5) with a bad faith intent to profit. *DiamlerChrysler v. The Net, Inc.,* 388 F.3d 201, 204 (6th Cir. 2004). Defendants argue that there is no genuine issue of material fact as to the final element, Defendants' lack of bad faith intent to profit.

The ACPA directs Courts to look to the following list of nine non-exhaustive factors when determining whether a defendant acted in bad faith:

1. The defendant's good faith claim to use the mark so as to coexist with plaintiff's mark in different and unrelated field.
2. The defendant's good faith claim to use of his or her personal name.
3. The defendant's prior use of the domain name for a bona fide offering of goods or services.
4. The defendant's bona fide non-commercial or fair use of the mark.
5. The defendant's intent to divert web users from plaintiff's web site to defendant's web site by creating a likelihood of confusion.
6. The defendant's offer to sell the domain name to plaintiff or another for financial gain without a bona fide use of the domain name.
7. Defendant's obtaining the domain name using misleading false contact information.
8. Defendant's knowingly obtaining multiple domain names similar to famous marks.
9. The amount of strength of plaintiff's mark.

15 U.S.C. § 1125(d)(1)(B)(i); *see also Audi AG v. D'Amato,* 469 F.3d 534, 548 (6th Cir. 2006); *see also* McCarthy § 25A:53; *see also Basile Baumann Prost Cole & Assocs., Inc., v. BBP& Assocs. LLC, et al.*, 875 F. Supp. 2d 511, 532 (D. Ma. 2012) ("In determining whether bad faith exists, the Court must view 'the totality of the circumstance'") (citations omitted). The first four factors tend to show the good faith of the defendant. The next four tend to show the bad faith of the defendant. The final factor tends to go either way depending on the circumstance.

Generally, the Plaintiff need not show evidence of bad faith in relation to each of the nine enumerated factors of the statute. *See Basile Baumann Prost Cole & Assocs., Inc.*, 875 F. Supp. 2d at 532-533 (finding that evidence related to only two of the nine factors was enough to raise material fact issue and deny summary judgment); *see also Carnivale v. Staub Design, LLC*, 700 F. Supp. 2d 60, 669 (D. Del. 2010) (finding that four factors in Plaintiff's favor were enough to raise material fact issue and deny summary judgment). Put simply, merely raising legitimate questions of bad faith, drawn from the totality of the circumstances, is enough to get to the jury.

Additionally, a "reasonable belief" defense exists, but is granted "very sparingly and only in the most unusual cases." *Audi AG,* 469 F.3d at 549 (6th Cir. 2006) (quoting McCarthy § 25:78). That is, the Court should place emphasis on the phrase "had **reasonable grounds** to believe that the conduct was lawful, focusing primarily upon the **objective reasonableness** and **credibility** of the defendant's professed ignorance of the fact that its conduct was unlawful." *Id.* (emphasis added). "Otherwise, every cybersquatter would solemnly aver that it was entitled to this defense because it believed that its conduct was lawful." *Id*. Questions of reasonableness and credibility are typically reserved for the fact-finder.

As explained above, there is an issue of material fact regarding the secondary meaning of the mark, 'DEARBORN TREE SERVICE.' This question speaks directly to the ninth factor of the bad faith intent analysis, "the strength of the mark." Without having fully addressed the merits and strength of the trademark, this factor remains an open question which would speak directly to Defendants' intent. If Plaintiff's trademark was very well known in the Metro-Detroit area, this would indicate more bad faith than if Plaintiff's trademark was relatively unknown.

Additionally, Plaintiff has brought evidence that the Defendants registered five similar domain names that would redirect to Defendants' webpage despite being aware of the present litigation **and** receiving inquiries about Plaintiff's company from customers. Further, Plaintiff has brought evidence to suggest that Defendants' actions were at least partially motivated by a wish to "piss off" the Plaintiff and put Plaintiff out of business. Thus, taken in the light most favorable to the nonmoving party, a reasonable juror could conclude that the Defendants acted with bad faith intent to profit from the use of the domain. Therefore, Defendants' Motion with regard to Count I fails.

*c. Concert of Action*

Finally, Defendants have moved for summary judgment on the claim for Concert of Action. In order to survive a motion for summary judgment in a Concert of Action claim, there must be evidence that Defendants acted tortuously pursuant to a common design. *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 337(1984). The Defendants argue that because the Plaintiff's claims in Count I and II are statutorily based, they cannot arise in tort, and thus no claim for Concert of Action may be heard. This is an erroneous misstatement of law.

Tort actions may be statutorily based. *Phillips v. Butterball Farms Co.*, 448 Mich. 239, 249 (1995) ("A cause of action seeking damages from an employer who violates the Worker's Compensation Act is independent of the contract, and sounds in tort, not contract"). A reasonable juror could conclude that the Defendants acted tortuously within the same common design: using unauthorized marks to divert business away from Plaintiff. Consequently, the Defendants' Motion as to Count V also fails.

**B. Plaintiff's Motion for Summary Judgment on Count III**

Plaintiff has made a Motion for Partial Summary Judgment with regard to Count III, Business Defamation. The elements of a claim of defamation are:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statements irrespective of special harm, or the existence of special harm caused by the publication.

*Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich. App. 74, 76-77 (1991). The elements must be specifically pled, "including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words." *Id.*

Plaintiff alleges three defamatory statements:

1. That Dearborn Tree Service is out of business.
2. That Dearborn Tree Service was dealing with issues surrounding tax evasion/fraud.
3. That Dearborn Tree Service is no longer allowed to do business in Dearborn.[3]

Allegedly, these statements were made in some combination to at least four different people: Stephanie Belmont, Michaeline Meek, Ronald Coole, and Steve Yuhasz. After an analysis of each statement, the Court finds that the Plaintiff is not entitled to partial summary judgment for Business Defamation.

### a. Statements Made to Steve Yuhasz and Other Parties

The Plaintiff alleges in the complaint that defamatory statements were made to three parties: Michaeline Meek, Stephanie Belmont and Roland Coole. However, in their Motion, Plaintiff alleges defamatory statements were also made to other parties, specifically a Steven Yuhasz. Under Michigan law, a claim for defamation must be specifically pled. *Stencel v. Augat Wiring Systems,* 173 F. Supp. 2d 669, 680 (E.D. Mich. 2001) (citing *Gonyea,* 192 Mich. at 77). Because Steven Yuhasz was not named in the complaint, no liability may be found for any statements made to him. *Gonyea*, 192 Mich. at 78 (holding the plaintiff's pleadings were deficient because they did not state to whom publication was made). In other words, liability may only be found for statements made to Michaeline Meek, Stephanie Belmont, and Roland Coole.

---

[3] In the Response, Defendants sought relief pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure regarding other allegedly defamatory statements in the pleadings. *See* Dkt. No. 149 at Pg. ID No. 2503. To the extent Defendants are seeking relief pursuant to Rule 56(f), they are required to file a separate motion. *See* E.D. Mich. L.R. – Appendix ECF at R5(e) ("[A] response or reply to a motion must not be combined with a counter-motion. Papers filed in violation of this rule will be stricken"). Nevertheless, at the hearing, Plaintiff indicated that these select three statements were the focus of the action. Accordingly, although the Court will disregard Defendants' counter-request, the Court will only take these three statements to trial.

*b. Statements Made to Meek, Belmont, and Coole*

Defendants argue that Ms. Meek, Mr. Coole, and Ms. Belmont reached out to Defendant Gray at the request of the Plaintiff. They then argue that because the three recipients were only communicating with Defendant Gray in a representative capacity of the Plaintiff, that the statements should not be considered defamatory because they were not published to a third person, but to an agent of the Plaintiff. Dkt. No. 149 at Pg. ID No. 2494. Plaintiff argues that, while it requested the three recipients to call a phone number, it did not ask any of the three to have conversations with Mr. Gray, and that they had those communications on their own volition. Dkt. No. 153 at Pg. ID. No. 3027-3028.

Authorities are split as to whether publication to a representative or agent of the person defamed constitutes an actionable publication.172 A.L.R. 208. Under Michigan law, statements to an agent or representative of the defamed are absolutely privileged. *Merritt v. Detroit Memorial Hospital,* 81 Mich. App. 279, 286 (1978). Statements that are absolutely privileged are not actionable, regardless of the existence of malice. *Stewart v. Troutt*, 73 Mich. App. 378, 385 (1977); *see also* Restatement (Second) of Torts § 577 (1977) ("So too, the communication to a servant or agent of the person defamed is a publication although if the communication is in answer to a letter or a request from the other or his agent, the publication **may not be actionable in defamation**.") (emphasis added). The question of whether a privilege attaches is a question of law. *Couch v. Schultz*, 193 Mich. App. 292, 294, (1992). However, whether an agency relationship exists is a **question of fact**. *Vargo v. Sauer,* 457 Mich. 49, 71 (1998) (emphasis added).

Here, authorization is in dispute. A reasonable person could disagree as to whether or not the communications took place "at the direction of, or through an understanding with, the

plaintiff." 172 A.L.R. 208. Therefore, the issue of agency must be submitted to the jury. *Schultz v. Guldenstein,* 144 Mich. 636 (1906) (upholding a trial court's submission of a case to the jury where there was dispute as to whether or not plaintiff directed her husband to engage in conversation with the defendant). Accordingly, Plaintiff's Motion is denied because the Defendants' liability will depend on whether the statements are found to be privileged at trial.[4]

### V. CONCLUSION

Accordingly, for the reasons discussed, the Defendants' Motion for Partial Summary Judgment is DENIED. Further, Plaintiff's Motion for Partial Summary Judgment is DENIED as well.

---

[4] Defendants, in their response, argue that the statements regarding "Tax Evasion/Fraud" are not actionable because they are "substantially true." Dkt. No. 149 at Pg. ID No. 2501. "[T]ruth is an absolute defense to a defamation claim." *Porter v. City of Royal Oak,* 214 Mich. App. 478, 486 (1995). Even if technically false, a claim for defamation will not exist "[i]f 'the gist, the sting, of the article is substantially true.'" *Hidebrant v. Meredith Corp.,* 63 F. Supp. 3d 732, 739 (E.D. Mich. 2014) (quoting *Fisher v. Detroit Free Press, Inc.,* 158 Mich. App. 409, 404 (1987)). Whether the substantial truth defense applies is a matter of law. *Mason v. New Yorker Magazine, Inc.,* 501 U.S. 496, 524 (1991).

    Defendants argue that the statements merely reflect the fact that Dearborn Tree did in fact have tax issues in early 2010. The Court disagrees. Under Michigan law, when a statement "alters the complexion of the affair" as to have a "different effect on the [listener] than that which the literal truth would produce," the statements are no longer substantially true. *Collins v. Detroit Free Press, Inc.,* 245 Mich. App. 27, 33 (2001). The gist or sting of saying "one is having tax issues" is different from "one is being investigated for tax fraud." The former merely implies that one owes the IRS some money (which was in fact the case), but the latter imputes a criminal intent to the subject of the statement. This is not a minor difference. According to the testimony, there were no tax fraud charges filed, nor an investigation started. Thus, the statement is not substantially true and the statement is still actionable pending the resolution of the privilege issue.

    Defendants also argue that the statements made about Plaintiff cannot be considered defamatory because the recipients "knew that the statements were untrue at the time they were made." Dkt. No. 149 at Pg. 2499 (citing *Ricciardi v. Weber,* 795 A.2d 914, 928 (N.J. App. Div. 2003)). This argument speaks to the harm element of defamation. Defendants, however, mischaracterize the required elements for a statement to be considered defamatory and actionable.

    Under Michigan law, a statement is defamatory if "it tends to so harm the reputation of an individual as to lower that individual's reputation in the community or deter third persons from association or dealing with that individual." *Am. Univ. of Antigua Coll. of Med. v. Woodward,* 837 F. Supp. 2d 686, 695 (E.D. Mich. 2011) (citing *Kevorkian v. Am. Medical Ass'n,* 237 Mich. App. 1, 5 (1999)). Further, false and malicious statements injurious to a person in his or her business, or that accuse the commission of a crime, are actionable *per se*, and "**special damages need not be alleged or proved**." *Heritage Optical Center, Inc., v. Levine,* 137 Mich. App. 793, 797(1984) (emphasis added); *see also Swagman v. Swift & Co.,* 7 Mich. App. 608, 611 (1967) ("It is well established that where words constitute slander Per se, special damages need not be alleged or proved"). Therefore, Defendants' argument with regard to harm is wrong. If Plaintiff proves that the statements were slander *per se*, it does not matter that the recipients knew them to be false. Special harm would no longer be necessary to show.

    Regardless, these arguments should have been made in Defendants' original Motion.

-17-

IT IS SO ORDERED.

Dated: August 27, 2015

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge